**WARD, KEENAN & BARRETT, P.C.**
Gerald Barrett, SBN 5855
2141 E. Camelback Rd., Suite 100
Phoenix, Arizona  85016
Telephone:  (602) 279-1717
Facsimile:  (602) 279-8908
gbarrett@wardkeenanbarrett.com

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| MATTHEW SCIABACUCCHI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SWIFT TRANSPORTATION COMPANY, RICHARD H. DOZER, GLENN BROWN, JOSÉ CÁRDENAS, JERRY MOYES, WILLIAM RILEY III, DAVID VANDER PLOEG, BISHOP MERGER SUB, INC., and KNIGHT TRANSPORTATION, INC.,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on April 10, 2017 (the "Proposed Transaction"), pursuant to which Swift Transportation Company ("Swift" or the "Company") and Bishop Merger Sub, Inc. ("Merger Sub") will be combined with Knight Transportation, Inc. ("Knight") (the "Proposed Transaction").

2. On April 9, 2017, Swift's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Knight. Pursuant to the terms of the Merger Agreement, the combination between Swift and Knight will be implemented through several steps that will occur in immediate succession.

3. First, Swift will amend its certificate of incorporation so that all of the outstanding class B shares of Swift (each of which is currently entitled to two votes) will convert into an equal number of shares of class A shares of Swift (each of which is currently entitled to one vote) (the "Swift Share Reclassification") and immediately afterwards each outstanding class A share of Swift will be combined by means of a reverse stock split into 0.720 of a class A share of Swift (the "Reverse Stock Split"). As part of the amendment to its certificate of incorporation, Swift will change its name to

"Knight-Swift Transportation Holdings Inc.," which will be the name of the combined company.

4. Immediately after the amendment to Swift's certificate of incorporation, Merger Sub, a direct wholly-owned subsidiary of Swift, will merge with and into Knight, with Knight becoming a wholly-owned subsidiary of the combined company. In the merger, each Knight share issued and outstanding immediately prior to the effective time of the merger will be converted into the right to receive one class A share of Swift.

5. After consummation of the Proposed Transaction, the Knight and Swift stockholders are expected to own approximately 46% and 54%, respectively, of the outstanding combined company shares, despite the fact that Swift's revenue was nearly four times larger than Knight's in 2016.

6. On May 24, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

7. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a)

and 20(a) of the 1934 Act and Rule 14a-9.

9. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Swift common stock.

12. Defendant Swift Transportation Company is a Delaware corporation and maintains its principal executive office at 2200 South 75th Avenue, Phoenix, Arizona 85043. Swift's common stock is traded on the NYSE under the ticker symbol "SWFT."

13. Defendant Richard H. Dozer ("Dozer") has served as a director of Swift since April 2008 and is Chairman of the Board. According to the Company's website, Dozer is Chair of the Audit Committee and a member of the Compensation Committee and the Nominating and Corporate Governance Committee.

14. Defendant Glenn Brown ("Brown") is a director of Swift. According to the Company's website, Brown is Chair of the Nominating and Corporate Governance Committee and a member of the Audit Committee and the Compensation Committee.

15. Defendant José Cárdenas ("Cárdenas") has served as a director of Swift

4

since July 2014. According to the Company's website, Cárdenas is a member of the Audit Committee, the Compensation Committee, and the Nominating and Corporate Governance Committee.

16. Defendant Jerry Moyes ("Moyes") is a director of Swift, and he serves as a consultant to the Company with the title of Founder and Chairman Emeritus. Moyes is one of the founders and former Chief Executive Officer ("CEO") of Swift. He controls approximately 55% of the voting power of the outstanding Swift shares.

17. Defendant William Riley III ("Riley") has served as a director of Swift since July 2014.

18. Defendant David Vander Ploeg ("Vander Ploeg") has served as a director of Swift since September 2009. According to the Company's website, Vander Ploeg is Chair of the Compensation Committee and a member of the Audit Committee and the Nominating and Corporate Governance Committee.

19. The defendants identified in paragraphs 13 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is an Arizona corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is an Arizona corporation, a wholly-owned subsidiary of the Company, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Swift (the "Class"). Excluded from the Class are defendants

herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of April 25, 2017, there were 83,539,116 shares of Swift class A common stock and 49,741,938 shares of Swift class B common stock outstanding held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. Swift is a transportation services company, operating one of the largest fleets of truckload equipment in North America from over 40 terminals near key freight centers and traffic lanes.

30. The Company began operations in 1966 with only one truck, with Moyes and his father and brother as its founders. The founders originally conducted operations under the name of Common Market Distributing, later buying Swift Transportation Co., Inc. ("Swift Transportation"). In the 1980s, Moyes bought out his partners, becoming the sole owner of Swift Transportation. In 1990, Swift Transportation went public on the NASDAQ stock market.

31. During 2016, the Company's consolidated average operational truck count was 17,548, which along with its intermodal containers covered 2.2 billion miles for shippers throughout North America, contributing to consolidated operating revenue of $4.0 billion and consolidated operating income of $242.0 million. As of December 31, 2016, Swift's fleet was comprised of 13,937 Company tractors and 4,429 owner-operator tractors, as well as 64,066 trailers, and 9,131 intermodal containers.

32. Moyes, along with certain of his family members and affiliates, beneficially own approximately 45% of Swift's class A and B shares.

7

33. On September 8, 2016, Swift announced that Moyes would retire from his position as CEO of Swift effective December 31, 2016, but that Moyes would serve as a consultant with the title Founder and Chairman Emeritus and would continue as a member of the Board. The Company and Moyes entered into a letter agreement (the "Agreement"), pursuant to which, commencing January 1, 2017 through December 31, 2019, Moyes would serve as a non-employee consultant for which he will receive compensation of $200,000 per month through December 31, 2019. Moyes also retained and continued to vest in approximately 94,400 outstanding stock options (with exercise prices of $23.30 and $24.84) and he continued to vest in outstanding performance equity awards, as if his employment continued. Also, additional outstanding stock options held by Moyes on September 8, 2016 were immediately vested and he was treated as having a termination of employment effective December 31, 2016.

***The Process Leading to the Proposed Transaction***

34. According to the Registration Statement, Knight and Swift have a "long-standing familiarity with each other's businesses as the two largest truckload companies in Phoenix, Arizona, with Kevin Knight, Executive Chairman of the board of directors of Knight, and Gary Knight, Vice Chairman of the board of directors of Knight, having previously worked at Swift until 1990."

35. On August 30, 2016, Moyes and Kevin Knight had a meeting at which Kevin Knight expressed Knight's interest in combining Knight and Swift. Moyes informed Kevin Knight that, in his view, such a combination could have merit, and Moyes subsequently informed Dozer of Knight's interest in a potential combination with

Swift.

36. On September 30, 2016, counsel to Moyes met with Kevin Knight to discuss "potential governance and voting terms" applicable to Moyes that would need to be resolved should a potential transaction be further pursued by Knight and Swift. These discussions between Moyes's counsel and representatives of Knight continued throughout the process leading to the Proposed Transaction.

37. On November 3, 2016, the Swift Board met and decided not to engage a financial advisor until a proposal was received from Knight, but that the members of the Board would pay themselves additional compensation for evaluating the potential transaction. Although the Registration Statement indicates that the Board members would be compensated "on a per meeting basis," the Registration Statement also indicates that the Board agreed to pay themselves additional compensation as follows: (i) $500 for one hour or less; (ii) $1,000 for one to four hours; and (iii) $2,500 for four hours or more. The Registration Statement, however, fails to quantify the amount of compensation each Board member received in connection with their consideration of the Proposed Transaction, which already fell squarely within their responsibilities as Board members and therefore did not require or justify additional compensation.

38. On November 28, 2016, Kevin Knight sent a draft indication of interest to Dozer, which contemplated a combination of Knight and Swift in an all-stock transaction in which each class A share of Swift and class B share of Swift would be exchanged for 0.740 of a share of the combined company (or 0.02 more per share than the ultimate merger consideration), and each share of Knight would be exchanged for one combined

company share. The indication of interest also contemplated that: (i) the combined company would include a number of Swift directors to be mutually agreed upon, but the combined company's board of directors would have a majority of its directors comprised of current directors of Knight; (ii) certain of Swift's key executive officers and operating team members would continue to hold leadership roles over Swift's business after closing; and (iii) both companies would continue to operate as distinct businesses with separate brands.

39. On December 1, 2016, the Swift Board met to discuss the Knight's proposal, and the Board also approved the selection of Morgan Stanley & Co. LLC ("Morgan Stanley") as its financial advisor in connection with the potential transaction, despite being informed that Morgan Stanley or an affiliate was a lender to each of Moyes and Keith Knight within the past two years. The Registration Statement, however, fails to disclose the timing and compensation Morgan Stanley earned for the lending services to each of Moyes and Keith Knight.

40. On January 27, 2017, counsel to Moyes sent to Knight's counsel a draft amendment to Moyes's existing consulting agreement with Swift revised to reflect Moyes would serve as Senior Advisor to the Executive Chairman and the Vice Chairman of the combined company should a potential transaction be pursued by Knight and Swift.

41. On February 6, 2017, at the request of Knight and Dozer, Swift's President and Chief Operating Officer, Richard Stocking, and Swift's Chief Financial Officer ("CFO"), Virginia Henkels ("Henkels"), met with representatives of Knight to discuss the potential roles of Swift management in the combined company, as contemplated by

Knight's initial proposal.

42. On February 28, 2017, the Swift Board met and Moyes informed the Board that he would not support any strategic transaction involving Swift other than a combination with Knight, ostensibly due to his strong, long-standing relationship with the Knights and his ability to continue to serve as a consultant with the attendant lucrative compensation payments.

43. On March 14, 2017, Knight provided Dozer with a revised proposal letter reflecting a 0.675 exchange ratio, as well as the following key governance terms: (i) Swift would remain as the surviving public company, (ii) the combined company would have a single class of shares outstanding, (iii) the combined company's board would consist of 10 to 15 directors, with two directors to be selected by the Swift Board and two directors to be selected by Moyes in his capacity as a stockholder, and (iv) Moyes and members of his family and the Knights would be subject to obligations to vote in favor of a transaction as well as standstill provisions and transfer restrictions with respect to the combined company and Moyes would have certain governance rights with respect to the combined company. That same day, Moyes met with representatives of Knight regarding potential governance matters that would apply to the combined company.

44. On March 19, 2017, Knight communicated to Dozer an offer to increase the exchange ratio to 0.70, and that Knight would welcome having Henkels serve as the CFO of the combined company. Two days later, on March 21, 2017, Knight stated that it would be willing to increase the exchange ratio to 0.72. That evening, the Swift Board determined to move forward with discussions based on an exchange ratio of 0.72. The

Board apparently never considered reaching out to any other potentially interested third parties, or creating a special committee of independent directors that could consider the efficacy of the Proposed Transaction without the influence or pressure from Moyes.

45. On March 31, 2017, Knight requested that Dozer and Vander Ploeg serve on the combined company board.

46. On April 9, 2017, the Swift Board met and Morgan Stanley provided the Board with its fairness opinion, which was based, in part, on projections that were provided to Morgan Stanley by the Company's management. Following the presentation, the Board approved the Merger Agreement and the Proposed Transaction, which was publicly announced the next day.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

47. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

48. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

49. The Registration Statement provides stockholders with three sets of certain of the Company's financial projections: (i) Swift December standalone projections; (ii) Swift December upside standalone projections; and (iii) Swift April standalone projections. The Registration Statement, however, fails to provide stockholders with a reconciliation of all non-GAAP to GAAP metrics for each set of projections, as well as each of the line items used to calculate the Company's unlevered free cash flows that

12

were used in Morgan Stanley's discounted cash flow analysis.

50. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Swift Management's Unaudited Prospective Financial Information" and (ii) "Opinion of Swift's Financial Advisor."

52. The Registration Statement omits material information regarding potential conflicts of interest of the Company's directors. Specifically, the Registration Statement indicates that, on November 3, 2016, the members of the Swift Board met and determined to pay themselves additional compensation, "on a per meeting basis," for evaluating the Proposed Transaction. The Registration Statement also indicates that the Board members agreed to pay themselves additional compensation as follows: (i) $500 for one hour or less; (ii) $1,000 for one to four hours; and (iii) $2,500 for four hours or more. The Registration Statement, however, fails to quantify the amount of compensation each Board member received in connection with their consideration of the Proposed Transaction.

53. Further, the Registration Statement fails to disclose whether the Board ever considered creating a special committee of independent directors to consider the Proposed Transaction in light of Moyes's controlling interest and influence in the Company.

54. This information is necessary for stockholders to understand potential conflicts of interest of the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction" and (ii) "Interests of Swift's Directors and Officers in the Transaction."

56. The Registration Statement omits material information regarding potential conflicts of interest of Morgan Stanley. Specifically, the Registration Statement states that, in connection with Morgan Stanley's wealth management business, Morgan Stanley or an affiliate thereof currently is a lender to Moyes and to Keith Knight. The Registration Statement, however, fails to disclose the amount of compensation Morgan Stanley has earned, or is expected to earn, in connection with those services.

57. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58. The omission of this material information renders the Registration

Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction" and (ii) "Opinion of Swift's Financial Advisor."

59. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Swift's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Swift**

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Swift is liable as the issuer of these statements.

62. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

63. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

64. The omissions and false and misleading statements in the Registration

Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

65. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

66. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

67. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Knight**

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. The Individual Defendants and Knight acted as controlling persons of Swift within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Swift and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content

and dissemination of the various statements that plaintiff contends are false and misleading.

70. Each of the Individual Defendants and Knight was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

72. Knight also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

73. By virtue of the foregoing, the Individual Defendants and Knight violated Section 20(a) of the 1934 Act.

74. As set forth above, the Individual Defendants and Knight had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct,

plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

| | | |
|---|---|---|
| 1 | Dated:  May 31, 2017 | s/Gerald Barrett |
| 2 | | Gerald Barrett, SBN 5855 |
| | **OF COUNSEL:** | **WARD, KEENAN & BARRETT, P.C.** |
| 3 | | 2141 E. Camelback Rd., Suite 100 |
| 4 | **RIGRODSKY & LONG, P.A.** | Phoenix, Arizona  85016 |
| | Brian D. Long | Telephone:  (602) 279-1717 |
| 5 | Gina M. Serra | Facsimile:  (602) 279-8908 (fax) |
| 6 | 2 Righter Parkway, Suite 120 | gbarrett@wardkeenanbarrett.com |
| | Wilmington, DE 19803 | |
| 7 | (302) 295-5310 | *Attorneys for Plaintiff* |
| 8 | **RM LAW, P.C.** | |
| 9 | Richard A. Maniskas | |
| | 1055 Westlakes Drive, Suite 3112 | |
| 10 | Berwyn, PA 19312 | |
| 11 | (484) 324-6800 | |

19